The opinion of the Court was delivered by
Dunkin, Ch.
It is not questioned that the circuit decree of the Court of Equity is in conformity with the unanimous judgment of the Law Court of Appeals in The State vs. Barefoot, 2 Rich. 209. Barefoot was indicted for bigamy, and the conviction was sustained upon the determination of the Court, that the marriage of the defendant, with his aunt, was valid, by the laws of South Carolina. The avowed object of the appeal is to obtain the review and reversal of that judgment.
Marriage in the State of South Carolina, has always been regarded as a merely civil contract. For any civil disability it may be treated as void by any judicial tribunal of the State. But the Court of Equity has no more authority over the subject than a Court of Law, and any attempt to exercise any greater or more extensive authority would be a simple act of usurpation. In Mattison vs. Mattison, 1 Strob. Eq. 387, it was determined unanimously by the Court of Errors that in a suit between the parties to the marriage seeking to have the same declared void, the Court of Equity had no jurisdiction. But in a suit between third persons, arising in the Court of Law, the validity of the same marriage, impeached on account of an alleged civil disability, was fully examined, discussed and determined. The same power is familiarly exercised by the Court of Equity, as is illustrated by the case of Foster vs. Means, Speer Eq. 569. All these inquiries relate, however, to some civil disability or other infirmity of that character in the alleged contract. But the incapacity in respect of proximity of relationship is a canonical, and not a civil, disability. Neither the Court of Chancery in England, nor any of the Law Courts had cognizance of canonical disabilities. When Parliament thought proper to interfere, and, by the Stat. 5 and *555 6, Will. iv, c. 54, declared that all marriages, thereafter celebrated between persons within the prohibited degrees of consanguinity or affinity, should be absolutely void, then the objection came within the cognizance df the Courts of Common Law. 2 Steph. Com. 284. So when the Legislature of South Carolina shall have prescribed within what degrees of relationship marriages shall be invalid, the law will be understood by the citizen, and enforced by the Courts. But by this appeal the Court is invoked to recognize a principle which would not only declare void a marriage between uncle and niece, and of course bastardize their issue, but a marriage between a man and his wife’s sister falls within the same category, ánd, if the canonical mode of computation of the Levitical degrees be adopted, a marriage between first cousins is equally prohibited. See note to 2 Steph. 284. On the other hand, extreme cases of unnatural alliances may be supposed at which the moral sense would be offended, but hitherto public sentiment, if not private morality, has repressed all such evils. It is far better to leave to the Legislature the appropriate duty of defining and prohibiting such evils rather than arm the Court of Chancery with ecclesiastical powers on a subject of great delicacy and pervading interest.
But the proposition of the appellants could not be successfully maintained in any Court of Great Britain, ecclesiastical, or civil. Marriages within the Levitical degrees are not void, but only voidable. And, even in Doctors’ Commons, you are not permitted to violate the sanctity of the tomb, and impeach for alleged canonical disability the validity of a nuptial contract which death has already dissolved. “Not only” (says a learned commentator) “are marriages, under these circumstances of disability, esteemed valid, until there be actual sentence of separation, but they are permanently valid, unless such sentence be given during the life of the parties. (For, after the death of either of them, the Courts of Common Law will not suffer the spiritual courts to declare such marriages *556 to have been void.”) 2 Steph. Com. 280. Bury's case 5, Rep. 98.
In the temporal Courts such marriages are held valid for all civil purposes unless sentence of nullity be obtained in the lifetime of the parties. Shelf. Mar. and Div. 482. A marriage within the prohibited degrees, not avoided during the lifetime of both parties, confers the civil rights of marriage, such as the right of dower — right of administration, &c. Shelf, p. 179. And the author refers to Co. Litt. 33 b., where it is said “that if a marriage be voidable in respect of consanguinity, affinity, &c., whereby the marriage might have been dissolved, yet if the husband die before any divorce, then for that it cannot now be avoided; this wife, de facto shall be endowed, for this is legitimum matrimonium quoad dotem.”
So, in this case, it appeared that Edward Bowers, the husband, was dead, and the circuit decree properly adjudged to his widow, Elizabeth Jemima, one-third of his estate under the statute of distributions.
It is ordered and decreed that the appeal be dismissed.
O’Neall, Waedlaw, Glover and Munro, JJ., concurred.

Appeal dismissed.